# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| NASTASSJA MCCULLOUGH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:25-cv-00901-O-BP |
| | § | |
| MHMR OF TARRANT COUNTY, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court are the Motion to Compel Arbitration and Appendix in Support (ECF Nos. 10-11) that Defendant MHMR of Tarrant County ("MHMR") filed on September 12, 2025; the response (ECF No. 14) Plaintiff Nastassja McCullough filed on October 10, 2025; and supplemental briefing (ECF Nos. 15-16) that McCullough filed on October 14 and 20, 2025, respectively. After reviewing the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that Chief United States District Judge Reed O'Connor **GRANT** Defendant's Motion to Compel Arbitration (ECF No. 10) and **STAY** the case pending completion of arbitration.

## I.    BACKGROUND

McCullough worked as a service coordinator for MHMR, a local governmental entity that provides support services to individuals with mental health conditions and intellectual disabilities, until her termination in August 2023. ECF No. 10 at 2-3. Sometime before February 2023, McCullough "responded to an APS [Adult Protective Services] allegation involving an MHMR client." ECF No. 6 at 2. According to McCullough, the "truthful[] respon[se]" she provided subsequently "subjected [her] to increasing hostility, suspicion, and bias from MHMR officials." *Id.* at 2-3. Later, in June 2023, McCullough became involved in a second APS investigation

regarding an alleged client's unspecified "statements" about McCullough, which McCullough contends MHMR "relied on" to "fabricat[e] a basis for [her] discipline." *Id.* at 3. In August 2023, while McCullough was on leave under the Family Medical Leave Act ("FMLA") leave, MHMR terminated her employment. *Id.* at 8.

On August 20, 2025, McCullough sued MHMR in this Court. ECF No. 1. In her amended complaint, she brings five claims: 1) FMLA interference and retaliation (29 U.S.C. §§ 2601-2654); 2) race and gender discrimination under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 200e *et. seq.*) and Chapter 21 of the Texas Labor Code; 3) Whistleblower Retaliation under The Texas Whistleblower Act (Chapter 554 of the Texas Government Code); 4) Failure to Hire / Ongoing Retaliation under the FMLA, Title VII, and the Texas Administrative Code; and 5) defamation / business disparagement under Texas common law. ECF No. 6 at 14-18.

On September 12, 2025, MHMR moved to compel arbitration and stay proceedings in this case. ECF No. 10. MHMR argues that it and McCullough executed an arbitration agreement on April 24, 2019 that submit all questions of validity, enforceability, and claim arbitrability to an arbitrator. *See generally id.*

McCullough argues that the circumstances of the case "satisf[y]" "ground[s] for denying arbitration under the Federal Arbitration Act [] § 2 savings clause." ECF No. 14 at 11. She contends that "fraud, procedural unconscionability, public-policy conflict, bad-faith retaliation, and MHMR's waiver of immunity" all constitute reasons to deny MHMR's motion. She also contends that the parties did not mutually assent to form an agreement to arbitrate, and that even if they did, MHMR waived its right to arbitrate via its litigation conduct in this case to date. *See generally* ECF Nos. 14-16.

## II.    LEGAL STANDARD

In the Federal Arbitration Act ("FAA"), Congress expressed "a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002). To assess whether a claim must be arbitrated, the Court conducts a two-step analysis. *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 514 (5th Cir. 2019); *see Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). The first step is contract formation—whether the parties entered into any arbitration agreement at all. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016).

If the answer is yes, the Court proceeds to the second step. *Lloyd's Syndicate*, 921 F.3d at 514. The second step involves contract interpretation to determine whether the arbitration agreement covers the plaintiff's claim. *Kubala*, 830 F.3d at 201. Ordinarily both steps are questions for the court. *Id.* (citing *Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)); *see First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

However, when an agreement to arbitrate "contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes." *Kubala*, 830 F.3d at 202 (citing *First Options*, 514 U.S. at 942, 115 S.Ct. 1920 (1995)). "Delegation clauses are enforceable and transfer [a] court's power to decide arbitrability questions to the arbitrator." *Id*. "[A] valid delegation clause requires the court to refer a claim to the arbitration to allow the arbitrator to decide gateway arbitrability issues." *Id.* (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)).

3

Thus, when an arbitration agreement contains a delegation clause, "the court's analysis is limited." *Id.* As the Fifth Circuit has explained:

> [The Court] performs the first step—an analysis of contract formation—as it always does. But the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated. If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases.

*Id.* (emphasis added) (citation omitted). The Fifth Circuit has further provided that "absent a challenge to the delegation clause itself, [courts] will consider the clause to be valid and compel arbitration. Challenges to the arbitration agreement as a whole are to be heard by the arbitrator." *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018) (cleaned up).

## III.    ANALYSIS

On April 24, 2019, McCullough (defined as "Employee") and MHMR (defined as "Employer") entered into an agreement titled At-Will Employment and Dispute Resolution Agreement ("the Agreement"). ECF No. 11-2 at 1-10. McCullough electronically signed the Agreement on that date, as did MHMR CEO Susan Garnett. *Id.* at 10. By its terms, the Agreement became effective on May 1, 2019. *Id.* at 1. In relevant part, the Agreement provides:

> All legally cognizable claims between Employee and Employer or any of its constituent members, employees, officials, officers, agents, affiliates, or benefit plans, arising from or in any way related to Employee's employment by Employer, including the termination thereof, including but not limited to the construction or application of this Agreement, shall be resolved exclusively by final and binding arbitration in Fort Worth, Texas by an arbitrator chosen by Employee from a list of arbitration providers which shall be maintained by Employer and, at all times shall include at least three arbitration neutrals and be available to all employees. . . .
>
> It is the parties' intent that all disputes of any legally cognizable claim, no matter whether alleged to arise by statute, contract, common law, or otherwise, between them must be arbitrated, and

4

this agreement expressly includes, but is not limited to, any dispute about the interpretation, scope, validity or enforcement of this Agreement or the extent of the arbitrability of any claim, any claim of employment discrimination of any nature, any claim for compensation or benefits including any claim under the Fair Labor Standards Act or state payroll or wage and hour laws and all other federal or state statute or regulation, Family Medical Leave Act (FMLA) or related state law or any related regulation, National Labor Relations Act, Americans with Disabilities Act, as amended, or any state law or regulation of any sort or any other claim, whether contractual, based on common-law, or statutory, arising out of, or in any way related to, Employee's application for employment or employment with Employer, the termination thereof, or any matter incident thereto. It is the intent of the parties that this agreement to arbitrate shall be construed as broadly as possible to include any and all legally cognizable disputes which may arise between them.

*Id.* at 3-4.

In the pending Motion, MHMR argues that the present dispute must be submitted to arbitration because McCullough and MHMR executed a valid agreement to arbitrate, which includes a provision to submit even threshold inquiries, such as the arbitrability of a claim, to an arbitrator. *See* ECF No. 10 at 7; ECF No. 17 at 6; *see also* ECF No. 11-2 at 4 (the contractual language MHMR cites).

Such a delegation clause is "enforceable and transfer[s] the court's power" to decide "gateway arbitrability issues" to the arbitrator. *Kubala*, 830 F.3d at 202. And, as explained, when the "party seeking arbitration [has] point[ed] to a purported delegation clause, the court's analysis is limited." *Id.* In these circumstances, the Court's first task is to perform an analysis of contract formation, "[b]ut the only question" that remains if the Court finds the existence of an agreement to arbitrate, "is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Id.*

As to the first step, the Court must "distinguish between 'validity' or 'enforceability' challenges and 'formation' or 'existence' challenges." *See Arnold v. Homeaway, Inc.*, 890 F.3d

5

546, 550 (5th Cir. 2018). In the presence of a delegation clause, a court must leave challenges to the validity or enforceability of a properly formed agreement to arbitrate to the arbitrator unless the validity of the delegation clause itself is specifically challenged. *Sitzman v. EK Real Est. Servs. of NY LLC*, No. 3:21-cv-2666-E, 2022 WL 17853214, at *4 (N.D. Tex. Dec. 21, 2022). The Court may, however, review challenges to whether the parties formed an agreement to arbitrate.

### A.    The parties formed a contractual agreement to arbitrate under Texas law.

In deciding whether McCullough and MHMR contractually agreed to arbitrate, the Court applies the applicable state law governing contract formation. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (collecting cases). Here, Texas law governs the Agreement. ECF No. 11-2 at 9 ("This Agreement is made and entered into within the State of Texas and the parties agree it . . . shall be governed by and construed solely in accordance with, under, and pursuant to the laws of the State of Texas."). Further, while the Agreement "is governed by the Texas Arbitration Act," its terms do not foreclose applicability of the Federal Arbitration Act. *Id.* at 7. Accordingly, the FAA also applies. *Poole-Ward v. Affiliates for Women's Health, P.A.*, 283 F. Supp. 3d 595, 598 (S.D. Tex. 2017) (citing *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 338 n.7 (5th Cir. 2004)); *see also Cap. Income Props.-LXXX v. Blackmon*, 843 S.W.2d 22, 23 (Tex. 1992) ("The [FAA] is part of the substantive law of Texas."). The parties do not challenge these conclusions in their pleadings.

"Under Texas law, a valid contract requires an offer, acceptance, mutual assent, execution and delivery of the contract with the intent that it be mutual and binding, and consideration." *In re Online Travel Co.*, 953 F. Supp. 2d. 713, 718 (N.D. Tex. 2013) (collecting Texas cases). Further under Texas law, the party seeking to compel arbitration bears the initial burden to establish the existence of an agreement to arbitrate. *Henry v. Gonzalez*, 18 S.W.3d 684, 688 (Tex. App.—San

6

Antonio 2000, pet. dism'd). The party seeking to compel arbitration must prove by a preponderance of the evidence that such an agreement exists. *See In re JP Morgan Chase & Co.*, 916 F.3d 494, 502-03 (5th Cir. 2019). The Court concludes that MHMR has established each of the elements of contract formation.

First, "[i]t is clearly established under Texas law . . . that the parties' mutual promise to resolve disputes through arbitration constitutes valid consideration for the arbitration agreement." *Fernandes v. Dillard's Inc.*, 997 F. Supp. 2d 607, 611 (S.D. Tex. 2014) (collecting Texas cases). Here, the parties each agreed to submit disputes to binding arbitration. *See* ECF No. 11-2 at 3 ("All legally cognizable claims between Employee and Employer . . . shall be resolved exclusively by final and binding arbitration in Fort Worth, Texas."); *id.* at 4 ("It is the intent of the parties that this agreement to arbitrate shall be construed as broadly as possible to include any and all legally cognizable disputes which may arise between them."). Thus, valid consideration supported the Agreement.

However, McCullough apparently challenges this conclusion. Under a subheading in which she alleges the Agreement's unconscionability, she writes "[w]hen an employer retains unilateral control over the process or acts in bad faith, courts deem the agreement illusory or enforceable." ECF No. 16 at 3. To the extent she intends by citing this maxim to allege that illusory consideration undergirds the Agreement, she does not sufficiently explain why. And the Court's review of the Agreement finds that its terms require both parties to submit any relevant dispute to arbitration and provide no mechanism by which a party can unilaterally rescind the terms of the Agreement. *See* ECF No. 11-2 at 2 ("The terms of this Agreement may only be modified by a separate written agreement that specifically states an intent to make that specific change and is signed by Employee and Employer's Chief Executive Officer.").

Next, MHMR has satisfied the remaining elements of contract formation under Texas law as well. "The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did." *E.g.*, *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio 1999, pet. denied). Here, MHMR offered the terms of the Agreement to McCullough, and she signed the Agreement (as did MHMR). ECF No. 11-2 at 10. "Evidence of mutual assent in written contracts generally consists of signatures of both of the parties and delivery with intent to bind." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) (per curiam); *see also Seifert v. United Build Homes, LLC*, 684 F. Supp. 3d 555, 564 (N.D. Tex. 2023) (finding both parties' signatures demonstrated an intent to be bound by the contract). Moreover, an "at-will employee who receives notice of an employer's arbitration policy and continues working with knowledge of the policy accepts the terms as a matter of law." *In re Dallas Peterbilt, Ltd.*, 196 S.W.3d 161, 162 (Tex. 2006). McCullough did exactly that.

However, McCullough challenges the existence of mutual assent. Specifically, she argues that "MHMR's false accusations (2022), disregard for protected leave (2023), and post-litigation obstruction (2025) show that the agency did not act in good faith toward Plaintiff, undermining any claim of fair assent to arbitration." ECF No. 16 at 3. And yet none of these alleged instances of MHMR's conduct (all of which came after the parties signed the Agreement in 2019) can destroy mutual assent. McCullough and MHMR both signed the Agreement, and McCullough does not allege her incapacity to contract. At most, she alleges certain instances of fraud, *see generally* ECF Nos. 14-16, but each of the examples she cites concerns incidents that occurred after April 24, 2019. At no point does McCullough contend that any of those incidents fraudulently induced her to enter into the Agreement. Instead, although her various allegations that MHMR staff made material misrepresentations to her or engaged in fraudulent conduct during her employment might

be relevant to her underlying claims, they do not concern the question of whether the parties agreed to arbitrate. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70-72 (2010). The Court finds that McCullough and MHMR formed a contractual agreement to arbitrate.

### B.    The purported delegation clause is a delegation clause.

Having found that the parties formed a contractual agreement to arbitrate, the Court's next task is to "determine whether the Agreement contains a delegation clause that 'clearly and unmistakably' provides for the validity and enforceability of the arbitration agreement to be decided by the arbitrator." *Maravilla v. Gruma Corp.*, 783 F. App'x 392, 396 (5th Cir. 2019).

The purported delegation clause MHMR points to provides in relevant part: "It is the parties' intent that all disputes of any legally cognizable claim . . . between them must be arbitrated. . . . includ[ing] . . . any dispute about the interpretation, scope, validity or enforcement of this Agreement or the extent of the arbitrability of any claim." ECF No. 10 at 7 (citing ECF No. 11-2 at 4). In addition to McCullough failing to specifically dispute that the Agreement contains a valid delegation clause, the Court also notes that the purported delegation clause includes the "broad and unqualified 'any dispute' language . . . [which] confirms that the delegation or arbitrability was intended to apply to *all* disputes between the parties." *Richland Equip. Co. v. Deere & Co.*, 745 F. App'x 521, 525 (5th Cir. 2018) (cleaned up). Therefore, the Court concludes that the delegation clause MHMR cites is indeed a delegation clause that clearly and unmistakably provides that the Agreement's validity and enforceability are threshold issues to be decided by arbitrator, not the Court. *See Maravilla*, 783 F. App'x at 396.

### C.    MHMR did not waive its right to arbitrate.

McCullough next contends that MHMR waived its right to pursue arbitration. *See* ECF No. 14 at 19. MHMR does not dispute that the Court, not the arbitrator, should resolve this issue.

Indeed, the presumption that a court should decide an issue may only be overcome when there is "clear and unmistakable evidence" of an agreement to the contrary. *First Options*, 514 U.S. at 944. There does not appear to be any language in the Agreement's delegation that provides such evidence. The delegation clause at issue delegates issues of the Agreement's interpretation, its scope, its validity, its enforcement, and any claim's arbitrability, but the clause is silent on waiver. *See* ECF No. 11-2 at 4. "If an arbitration agreement does not specify who should decide a particular issue, courts should not 'interpret silence or ambiguity . . . as giving the arbitrator that power.'" *Tellez v. Madrigal*, 292 F. Supp. 3d 749, 756 (W.D. Tex. 2017) (citing *First Options*, 514 U.S. at 945) (declining to read a delegation clause that provided for "all disputes" concerning arbitrability to clearly and unmistakably cede resolution of the question of waiver to the arbitrator); *see also id.* (citing *Vine v. PLS Fin. Servs., Inc.*, 689 F. App'x 800 (5th Cir. 2017) (the question of litigation-conduct waiver should not presumptively belong to an arbitrator)).

Accordingly, the Court decides whether MHMR waived its right to arbitrate this case. A party waives arbitration if it "knowingly relinquish[es] the right to arbitrate by acting inconsistently with that right." *Garcia v. Fuentes Rest. Mgmt. Servs. Inc.*, 141 F.4th 671, 676 (5th Cir. 2025) (quoting *Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022)). In making this determination, the Court "consider[s] the totality of the circumstances." *Id.* at 677. A party opposed to a motion to compel arbitration may demonstrate that the opposing party participated in a "substantial invocation of the judicial process." *Id.* at 676. This involves "at the very least . . . some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999).

To that end, McCullough argues that MHMR's statement in its Answer that it "reserves the right to rely upon such other defenses and affirmative defenses as may become available or

apparent during discovery proceedings in this case," is evidence of an invocation of the Federal Rules of Civil Procedure and a resultant waiver of MHMR's right to arbitrate. *Id.* (citing ECF No. 10 at 23). But this argument is unpersuasive.

The Fifth Circuit has concluded that the act of filing an Answer is not a substantial enough invocation of the judicial process to constitute a defendant's waiver of its right to arbitrate. *Garcia*, 141 F.4th at 679. Indeed, since "answers are the most basic form of responsive litigation, with failure to answer resulting in default judgment . . . [,] [t]o find that the filing of an answer always contributes to substantially invoking the judicial process would be to turn a blind eye to the realities of litigation." *Id.* The Court can discern no persuasive reason why the content of MHMR's Answer should change this calculus.

First, the assertion of affirmative defenses is a critical, constituent part of a defendant's Answer. Next, all MHMR did by including the language McCullough challenges was reserve its right to pursue other defenses throughout the lifetime of this case. To the extent an objective reader could say that MHMR invoked the Federal Rules of Civil Procedure, that is all MHMR did. It did not serve a request for admission or a request for production or file a motion to compel. It stated that it "is not actually seeking discovery." ECF No. 17 at 15. MHMR asserts that its only overt act in this case has so far been to "timely answer *subject to* its Motion to Compel Arbitration." *Id.* (emphasis in original). The Court concludes that this limited activity is not a substantial invocation of the judicial process.

McCullough also argues without support that MHMR's "asserti[on] [of] contradictory defenses" and alleged "neglect[] [of] its statutory duty to report alleged violations" constitute waiver as well. These arguments are unclear and unconvincing.

Because the Court concludes MHMR has not substantially invoked the judicial process, it concludes that MHMR has not waived its right to arbitrate.

### D.    McCullough's other objections are for the arbitrator to decide.

McCullough raises several other objections across her three responses to MHMR's Motion, but none concern the formation of the Agreement nor specifically challenge the delegation clause. But absent a successful challenge to the formation of a contractual agreement to arbitrate, or a "challenge[] [to] the delegation provision specifically," the Court's has no decisional role here. *See DoorDash, Inc.*, 888 F.3d at 744. Having concluded that the parties formed a contractual agreement to arbitrate with a delegation clause, any challenge to the Agreement's validity or enforceability in this case is for the arbitrator. *Id.*; *see also Sitzman*, 2022 WL 17853214, at *8 (unconscionability is a question of enforceability under Texas law). Thus, McCullough's arguments against enforcement of the Agreement due to public policy, bad faith, and procedural unconscionability are for the arbitrator to consider, and the Court cannot do so.

The Court also notes that although McCullough cites to a case ostensibly styled *Brown v. MRS Mgmt., LLC*, 516 S.W.3d 389, 396 (Tex. App.—Houston [1st Dist.] 2017, pet. denied), for the proposition that MHMR may not "invoke both sovereign immunity and contractual arbitration rights," ECF No. 14 at 20 n.43, there is no record of that case having ever existed, and the page in the Southwest Reporter to which McCullough directs the Court is a case from the Missouri Court of Appeals concerning a motion for remittitur from a jury finding of trespass. *Bare v. Carroll Elec. Coop. Corp.*, 516 S.W.3d 395, 396 (Mo. Ct. App. 2017). In any event, MHMR has not yet invoked any degree of immunity, and the Court will leave any questions raised by immunity, if they arise, to the arbitrator in accordance with the parties' Agreement to delegate issues of enforcement.

**E.      The Court should stay the case pending conclusion of arbitration.**

"When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." *Smith v. Spizzirri*, 601 U.S. 472, 475 (2024). Here, MHMR moves to stay the lawsuit pending arbitration. *E.g.*, ECF No. 10 at 10. Thus, the Court should stay the case pending resolution of the arbitration proceedings and order the Clerk to administratively close the case in the meantime.

## IV.      CONCLUSION

For these reasons, the undersigned **RECOMMENDS** that Chief Judge O'Connor **GRANT** MHMR's Motion to Compel Arbitration (ECF No. 10), **STAY** McCullough's claims pending resolution of this dispute in binding arbitration, and **ORDER** McCullough and MHMR to file a Motion to Reopen the Case, if necessary, following conclusion of the arbitration.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th

Cir. 1996) (en banc), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

      **SIGNED** on March 5, 2026.

                                      Hal R. Ray, Jr.

                                      UNITED STATES MAGISTRATE JUDGE